UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

FRONTLINE PETROLEUM                 CIVIL ACTION NO. 6:13-cv-1259
TRAINING SYSTEM, LLC

VERSUS                              JUDGE DOHERTY

PREMIER SAFETY MANAGEMENT,          MAGISTRATE JUDGE HANNA
INC. AND CHRISTOPHER M.
EDWARDS


## REPORT  AND  RECOMMENDATIONS


Currently pending is a motion filed by defendant Premier Safety Management,

Inc., which seeks dismissal of the plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6)

for failure to state a claim upon which relief may be granted and which alternatively

seeks the dismissal of the plaintiffs' claims against Premier under Fed. R. Civ. P. 21

for misjoinder.  (Rec. Doc. 7).  The motion was referred to the undersigned for

review, report, and recommendation in accordance with the provisions of 28 U.S.C.

§ 636 and the standing orders of this Court.  (Rec. Doc. 10).  The motion is opposed,

and oral argument was heard on September 24, 2013.  Thereafter, the plaintiffs'

complaint was amended (Rec. Doc. 22),  the defendant supplemented its motion to

dismiss in light of the amended complaint (Rec. Doc. 24), and the plaintiffs

responded (Rec. Doc. 25).  Having considered the evidence, the law, and the

arguments of the parties, and for the reasons fully explained below, the undersigned recommends that the motion be DENIED.

## BACKGROUND

The following facts are alleged in the plaintiffs' amended complaint. SafeLandUSA Advisory Group promulgates safety standards for the oil and gas industry. All personnel working on domestic oil and gas exploration and production sites must produce cards showing that they have been trained in accordance with those standards. SafeLandUSA has authorized only three organizations to issue the necessary cards. Those three organizations generally do not conduct training and testing themselves; instead, they delegate those functions to others.

Defendant Premier is one of the three organizations authorized by SafeLandUSA to issue the necessary identification cards. The plaintiffs, Frontline Petroleum Training Systems, LLC and its employees Stephen Staples and Charles Michael Smith, conduct safety training courses and determine whether persons taking the courses have successfully completed the training. In early 2012, two of Frontline's employees, Smith and Staples, became subscribers to Premier and were designated as instructors authorized to teach SafeLandUSA courses. Frontline, through Smith and Staples, began teaching SafeLandUSA-approved courses through Premier. When the courses were completed, Frontline would submit documentation

-2-

to Premiere, and Premiere would send safety identification cards to Frontline's customers who successfully completed the training courses.

At some indefinite point in time, described as being "in the beginning" of Frontline's relationship with Premier, Frontline contracted with defendant Christopher M. Edwards, who had previously been approved by Premier as a training provider, to perform administrative support for the process of completing and returning to Premier the documents required at the end of each training course. Edwards allegedly engaged in acts that damaged Frontline, including but not limited to forging the signatures of trainee test takers and sending falsely completed documents to Premier. Frontline alleges that Edwards's actions were egregious, unethical, deceptive, fundamentally unfair, violated the Louisiana Unfair Trade Practices Act, damaged Frontline's business reputation, and damaged Smith's and Staples's professional reputations.

On August 17, 2012, Staples conducted his first SafeLandUSA training class, and Frontline paid Edwards to process the paperwork for the class. On October 9, 2012, Frontline's representatives met with Premier's representatives in Houston regarding alleged deficiencies in the processing of the testing materials from that course. On October 15, 2012, Staples returned to Houston with corrected materials.

-3-

A few days later, Staples was informed that his authority to teach for Premier was suspended pending an investigation into allegedly forged signatures on the testing materials for the course that he taught in August 2012 and into whether the course was actually taught in San Antonio, TX.  Frontline subsequently advised Premier that Edwards forged the signatures, and a Premier representative allegedly acknowledged both that the handwriting on the testing materials appeared to be that of Edwards and that Premier had experienced problems with Edwards in the past. Still, on October 29, 2012, Premier permanently revoked Staples's authority to teach SafeLandUSA courses through Premier.  In its revocation letter, Premier stated that Staples had admitted forging the signatures, while the plaintiffs maintain that Premier knew this statement to be false.  Kathy Smith and Michael Smith, both with Frontline, wrote explanatory letters to Premier, but Premier did not reinstate Staples.

On December 14, 2012, Premier suspended Michael Smith's authority to teach SafeLandUSA courses.  Premier advised Smith that policy violations were occurring similar to those associated with Staples's course.  The plaintiffs maintain, however, that not only were there no violations but Premier knew or should have known that there were no violations.

The plaintiffs contend that Premier was unjustified in revoking Smith's and Staples's teaching authority.  The plaintiffs further contend that Premier's actions in

doing so was egregious, unethical, deceptive, fundamentally unfair, severely impaired Frontline's ability to carry out its business operations, damaged Staples's and Smith's reputations, caused Staples and Smith to expend the sums necessary to become relicensed, and violated the Louisiana Unfair Trade Practices Act.

In its motion, Premier argues that the plaintiffs' claims against it should be dismissed for two reasons.  First, Premier argues that the plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because the allegations set forth in the complaint fail to state a claim under the Louisiana Unfair Trade Practices Act. Second, Premier argues that the plaintiffs' claims against Premier should be dismissed under Fed. R. Civ. P. 21 because Premier was improperly joined in the lawsuit.

## ANALYSIS

### A.   THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6), is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[1]  When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto.[2]  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable

---

[1]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[2]    *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

to the plaintiff.[3]  However, conclusory allegations and unwarranted deductions of fact are not accepted as true,[4] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[5]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[6]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[7] and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[8]  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

---

[3]      *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[4]      *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[5]      *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[6]      *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[7]      *Bell Atlantic v. Twombly,* 127 U.S. at 555.

[8]      *Bell Atlantic v. Twombly,* 127 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

elements of a cause of action will not do."[9]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[10]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]   "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[13]

---

[9]     *Bell Atlantic v. Twombly*, 127 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[10]     *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[11]     *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

[12]     *Ashcroft v. Iqbal*, 129 S.Ct. at 1950.

[13]     *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556.  See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

**B.    THE PLAINTIFFS' COMPLAINT STATES A CLAIM AGAINST PREMIER**

In diversity cases such as this one, federal courts must apply state substantive law.[14]  The plaintiffs seek to recover from both Edwards and Premier under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, *et seq*. Therefore, to state a plausible claim in this case, the plaintiffs must allege facts corresponding to the elements of a LUTPA claim.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[15]  The statute defines the word "person" to include natural persons, partnerships, or corporations,[16] and states that any person who suffers an ascertainable loss as a result of an unfair or deceptive trade practice can maintain a cause of action under LUTPA.[17]  Therefore, "[t]he elements of a cause of action under the LUTPA are:  (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor[,] or other person

---

[14]    *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007); citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[15]    La. R.S. 51:1405.

[16]    La. R.S. 51:1402(9).

[17]    La. R.S. 51:1409(A).   See, also, *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 2009-1633 (La. 04/23/10), 35 So.3d 1053, 1057 (curing a split in the circuits by holding that "[a]lthough business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members.")

to whom the statute grants a private right of action; (3) which has caused ascertainable loss."[18]

The statute does not specifically state what constitutes an unfair or deceptive trade practice.[19] Instead, "[i]t has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition."[20] It is clear, however, that neither negligence nor a breach of contract is a LUTPA violation.[21] Louisiana jurisprudence explains that a trade practice is unfair when it offends established public policy and is unethical, oppressive, unscrupulous, or substantially injurious,[22] and that a trade practice is deceptive when it amounts to fraud, deceit, or misrepresentation.[23] The range of practices prohibited by LUTPA is narrow, but

---

[18]     *Who Dat Yat LLC v. Who Dat? Inc.*, Nos. 10-1333, 10-2296, 2011 WL 39043, at *3 (E.D. La. Jan. 4, 2011).

[19]     *Levine v. First Nat. Bank of Commerce*, 2006-0394 (La. 12/15/06), 948 So.2d 1051, 1065-66.

[20]     *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 2009-1633 (La. 04/23/10), 35 So.3d at 1059. See, also, *Levine v. First Nat. Bank of Commerce*, 948 So.2d at 1065-66.

[21]     *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)

[22]     *Levine v. First Nat. Bank of Commerce*, 948 So.2d at 1065-66.

[23]     See, e.g., *Southern General Agency, Inc. v. Burns & Wilcox, Ltd.*, No. 09-1918, 2012 WL 3987890 (W.D. La. Sept. 11, 2012). See, also, *Bartholomew Investments-A, L.L.C. v. Margulis*, 2008-0559 (La. App. 4 Cir. 09/02/09), 20 So.3d 532, 538-39, and the cases cited therein.

"LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions."[24]

To satisfy the first LUTPA element, the plaintiffs must allege an unfair or deceptive trade practice by the defendants.  The plaintiffs allege that Edwards forged signatures on documents he submitted to Premier on behalf of Frontline.  This is an allegation of a deceptive business practice.  The plaintiffs allege that Premier terminated Smith's and Staples's credentials as SafeLandUSA instructors after falsely claiming that they had violated Premier's policies and while knowing that the stated reason for the termination of their credentials was not based in fact.  This is an allegation of unfair or deceptive business practices.  Therefore, the undersigned finds that these allegations are sufficient to satisfy the first LUTPA element.

The plaintiffs contend that actions by Edwards and Premier constitute unfair trade practices.  Staples and Smith are individual persons and Frontline is a business entity or juridical person.  Accordingly, all three plaintiffs have standing to assert these claims.  Therefore, the second LUTPA element is satisfied.

The plaintiffs claim that they sustained damages due to the defendants' actions.  More particularly, Frontline claims that its business reputation was negatively impacted by Edwards's actions and that Premier's termination of Smith's and

---

[24]     *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d at 1060.

Staples's credentials prevented it from being able to continue to offer the training courses that Smith and Staples previously taught.  Smith and Staples allege that they sustained monetary damages because they had to be relicensed.  Although dollar amounts are not assigned to the damages alleged in the complaint, it is plausible that evidence can be presented at a later stage of this litigation substantiating the amount of these losses through the application of simple mathematical formulas. Consequently, the alleged losses are ascertainable.  The undersigned therefore finds that these allegations satisfy the third element of a LUTPA claim.

Premiere argues, in support of its motion, that Frontline's claim is "a wholly unsupported breach of contract dispute rather than a claim involving unfair or deceptive acts."[25]  But the complaint contains no allegation that Frontline, Smith, or Staples contracted directly with Premier, and Premier did not establish the existence of such a contract in its briefing.  Absent a contract, there can be no breach of contract claim.  Accordingly, the plaintiffs' claim against Premier cannot be properly characterized as a breach of contract claim.  Additionally, the plaintiffs do not allege that the termination of Premier's relationships with Smith and Staples was the result of mere negligence on Premier's part.  The undersigned therefore concludes that the

---

[25]     Rec. Doc. 7-1 at 6.

plaintiffs' claim against Premier cannot properly be categorized as a negligence claim or a breach of contract claim to avoid the applicability of LUTPA.

Premier primarily relies upon two cases, both of which are distinguishable.  In *Knatt v. Hospital Service District No. 1 of East Baton Rouge Parish*, the court determined that the defendant's refusal to continue to lease office space was not an unfair trade practice.[26]   But that determination was made after consideration of a motion for summary judgment.  The litigation in this case has not yet reached the summary judgment stage; therefore, this is not the time to determine whether an alleged act does or does not actually constitute an unfair trade practice.  It is enough, at this stage, that an unfair trade practice has been alleged.  Furthermore, the parties in *Knatt* had a contractual relationship, which one of the parties decided to terminate in accordance with the terms of the contract.  As noted, however, there is no evidence of a contract between Premier and either Frontline, Staples, or Smith.  Therefore there is no allegation, in this case, that a contractual breach of any kind constituted an unfair trade practice.  The *Knatt* case consequently provides little, if any, guidance.

The second case that Premier relies upon is *Cargill, Inc. v. Degesch America, Inc.*  Cargill sold a quantity of yellow corn and agreed to ship it to the purchaser in

---

[26]    *Knatt v. Hospital Service District No. 1 of East Baton Rouge Parish*, 289 Fed. App'x 22, 30 (5th Cir. 2008).

Syria.  Cargill then contracted with Degesch to fumigate the corn after it was loaded into a ship's cargo holds.  Degesch fumigated the corn and provided a certificate stating that the fumigation was performed in accordance with certain industry standards.  In actuality, the fumigation was not performed correctly, and the vessel's cargo holds exploded and caught fire.  The purchaser then voided the sale.  The court determined that Cargill had not stated a LUTPA claim because "they have not adequately alleged defendants' intent to deceive."[27]  The court noted that "LUTPA is concerned with the intentional deception undergirding defendants' acts" and found that Cargill "failed to invite any inference of egregious wrongdoing by defendants."[28]

In this case, however, the plaintiffs allege that Premier revoked Staples's and Smith's teaching authority by claiming that Staples and Smith had violated Premier's policies while actually knowing that no such violations had occurred.  This is sufficient to satisfy the *Cargill* court's concern about deception.

In summary, the undersigned finds that the allegations set forth in the plaintiffs' amended complaint are sufficient to state a plausible LUTPA claim. Accordingly, the undersigned recommends that Premier's motion to dismiss for failure to state a claim should be denied.

---

[27]    *Cargill, Inc. v. Degesch America, Inc.*, 875 F.Supp.2d 667, 676 (E.D. La. 2012).

[28]    *Cargill, Inc. v. Degesch America, Inc.*, 875 F.Supp.2d at 677.

C.     THE STANDARD FOR ANALYZING A RULE 21 MOTION TO DISMISS A PARTY

Under Fed. R. Civ. P. 21, misjoinder of parties is not a ground for dismissal of an action, but the court may order parties dropped or added, on the motion of a party or on its own initiative, at any stage of the litigation and on such terms as may be just. Rule 21 also permits the court to sever claims.  The implementation of Rule 21 is left to the sound discretion of the trial court.[29]

In deciding a Rule 21 motion, the joinder standard of Fed. R. Civ. P. 20 applies.[30]  The permissive joinder of defendants is proper, under Fed. R. Civ. P. 20(a)(2), when (1) the claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" and when (2) there is at least one common question of law or fact linking all of the claims.[31]  "Generally, as long as both prongs of the test are met, 'permissive joinder of plaintiffs . . . is at the option of the plaintiffs.'"[32]  Even when the test is satisfied, however, district courts retain the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or

---

[29]        *Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir. 1977)).

[30]        *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).

[31]        *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d at 521; *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 n. 11 (5th Cir. 1995); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1683.

[32]        *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d at 521 (quoting *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d at 574 n. 11).

safeguarding principles of fundamental fairness.[33]   Additionally, a court has broad

discretion to sever misjoined parties.[34]

## D.   THE PLAINTIFFS' CLAIMS AGAINST EDWARDS AND PREMIER ARE NOT MISJOINDED

The first prong of the two-part test for proper joinder requires that the claims

against the defendants arise out of the same transaction, occurrence, or series of

transactions or occurrences.  Premier argues, in this case, that there is no allegation

connecting the plaintiffs' allegations against Premier to the forgery allegation against

Edwards.  The undersigned finds that this is too narrow a reading of the jurisprudence

interpreting Rule 21.  Both the claim against Premier and the claim against Edwards

arise out of Premier's relationship with Frontline, Staples, and Smith and the

termination of that relationship since Frontline contracted with Edwards to provide

administrative functions connected with its providing training courses for Premier

and the plaintiffs contend that Edwards improperly completed and submitted

paperwork to Premier.  Whether Edwards's alleged forgery of documents that he

submitted to Premier on behalf of Frontline resulted in Premier terminating its

relationship with Frontline and Frontline's employees Smith and Staples is a factual

---

[33]     *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d at 521.

[34]     *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

-15-

issue to be resolved later in this litigation, but the amended complaint links Edwards's alleged forgeries with Premier's reasons for terminating both Smith's and Staples's teaching privileges.  All that is required at this point is that the claims arise out of the same transaction or occurrence or the same series of transactions and occurrences.  The undersigned finds that the allegations concerning Edwards and those concerning Premier are sufficiently related to satisfy this requirement.

The second prong of the two-part test for proper joinder is whether there is at least one common question of law or fact linking all of the claims.  Here, the plaintiffs have asserted claims under the Louisiana Unfair Trade Practices Act against both Edwards and Premier.  Thus, there is a common question of law linking the claims.  As noted, there also is a common question of fact because it will be necessary to explore whether Premier terminated its relationship with Smith, Staples, and Frontline because of what Edwards allegedly did.

Having found that both prongs of the joinder test are satisfied in this case, the undersigned recommends that Premier's motion should be denied to the extent it seeks dismissal of the claim against Premier on the basis that Premier was misjoined.

## CONCLUSION

For the foregoing reasons, it is recommended that the motion to dismiss (Rec. Doc. 7), which was filed by defendant Premier Training Systems, LLC, be DENIED.

-16-

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 13th day of November 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-17-